UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN ORTEGA, | CASE NO. C26-1424-KKE |
| Petitioner(s), | ORDER ON HABEAS PETITION |
| v. | |
| BRUCE SCOTT, et al., | |
| Respondent(s). | |

Petitioner Juan Ortega, a citizen and national of El Salvador, filed a petition for a writ of habeas corpus challenging his detention at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  Dkt. No. 4; *see* 28 U.S.C. § 2241.  Petitioner is subject to a final order of removal to El Salvador, but his removal is stayed pending his appeal of an immigration judge's decision denying him withholding or deferral of removal.  Immigration and Customs Enforcement ("ICE") has now detained Petitioner for over nineteen months without a bond hearing and is currently housing him in conditions analogous to solitary confinement.  Until recently, ICE has failed to conduct an internal review of his custody, as required by Department of Homeland Security ("DHS") regulations.

ORDER ON HABEAS PETITION - 1

Because the procedures by which ICE has decided to continue Petitioner's detention are constitutionally inadequate, the Court will grant Petitioner's habeas petition in part and order the Government[1] to provide him a bond hearing within fourteen days.

## I. BACKGROUND

Petitioner is a native and citizen of El Salvador who entered the United States without inspection more than twenty years ago. Dkt. No. 11 ¶ 4–6. In 2004, Petitioner obtained temporary protected status. *Id.* ¶ 6. U.S. Citizenship and Immigration Services ("USCIS") renewed that status periodically until 2013. *Id.* ¶ 7. Since then, Petitioner has not applied for immigration status in the United States. *Id.* ¶ 8.

In 2023, Petitioner was convicted of Second Degree Robbery in San Mateo, California—a felony under California law—and was sentenced to two years imprisonment. *Id.* ¶ 9; Dkt. No. 12-1 at 2. Upon completing his sentence, ICE detained Petitioner and transferred him to NWIPC pending possible removal. Dkt. No. 11 ¶ 11.

On the day he was detained, ICE served Petitioner with a notice indicating it intended to issue him a Final Administrative Removal Order ("FARO"). *Id.* ¶ 12; *see also* Dkt. No. 12-2 at 2. The notice charged Petitioner as being subject to expedited removal under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1228(b) because he was convicted of an aggravated felony (as defined in 8 U.S.C. § 1101(a)(43)(G)). Dkt. No. 12-2 at 2. Petitioner acknowledged receipt of the notice and did not contest removability but requested withholding or deferral of removal to El Salvador under the Immigration and Nationality Act and the Convention Against Torture. *Id.* at 3. The same day, ICE issued the FARO ordering Petitioner removed to El Salvador. Dkt. No. 12-2 at 4.

---

[1] This order refers collectively to all Respondents except Bruce Scott as "the Government."

ORDER ON HABEAS PETITION - 2

In November 2024—several months into his detention at NWIPC—a USCIS asylum officer interviewed Petitioner to determine if he had a reasonable fear of persecution or torture in El Salvador to support his request for withholding or deferral of removal. Dkt. No. 11 ¶ 15. Days later, USCIS referred Petitioner to an immigration judge ("IJ") for withholding-only proceedings. *Id.* ¶ 16. On September 15, 2025, an IJ denied Petitioner's requests for relief. *Id.* ¶ 17. Petitioner then filed an appeal to the Board of Immigration Appeals ("BIA"), which remains pending. *Id.* ¶ 18. Petitioner's appeal created an automatic stay of removal that will remain in place until the appeal is concluded. *Id.*; 8 C.F.R. §1003.6(a).

Petitioner has now been detained for over a year and a half. The Government concedes that it failed, at any time prior to this habeas case, to conduct a post-order custody review (*id.* ¶ 19), which—according to its regulations—is supposed to occur "prior to the expiration of the [90-day] removal period" that commences upon entry of a final removal order, and periodically thereafter. 8 C.F.R. § 241.4(h), (k)(1)(i), (k)(2)(i)–(iii).[2] When ICE's predecessor agency published the regulations requiring such reviews, it explained that the regulation was intended to provide noncitizens constitutionally mandated due process, explaining that § 241.4 includes "the procedural mechanisms that … courts have sustained against procedural due process challenges." Detention of Aliens Ordered Removed, 65 Fed. Reg. 80281–01, at 80283 (Dec. 21, 2000). A month and a half after Petitioner filed this habeas case, the government filed a declaration stating that ICE had finally completed a post-order custody review and determined to continue Petitioner's detention. Dkt. No. 19 ¶ 2. ICE's decision, which is attached to that declaration, contains check-boxes, all of which are marked, indicating that ICE determined (1) that Petitioner failed to

---

[2] The regulations provide that post-order custody review may be postponed beyond the specified times if the "detainee's prompt removal is practicable and proper, or for other good cause." 8 C.F.R. § 241.4(k)(3). But any such decision and the reasons for the postponement must be documented. *Id.* The Government does not contend Petitioner's custody review was delayed for this reason.

ORDER ON HABEAS PETITION - 3

demonstrate that he would not pose a danger to the community if released, (2) that Petitioner failed to demonstrate that he would not pose a significant flight risk if released, and (3) that ICE believes Petitioner's removal is likely to occur in the reasonably foreseeable future and is in the public interest. Dkt. No. 19-1.

Since he has been detained, Petitioner claims ICE has held him in a segregation unit, where he is alone in his room twenty-two hours of the day and remains alone during the other two hours, in which he is allowed to leave his room for daily recreation. Dkt. No. 16-2 ¶¶ 2–3. NWIPC staff informed Petitioner he is in segregation because he would be in danger from certain gang members in the general population. *Id.* ¶ 2.

On April 27, 2026, Petitioner filed his proposed habeas petition and moved to proceed in forma pauperis ("IFP"). Dkt. Nos. 1, 1-1. The Court granted IFP (Dkt. No. 3) and later referred this case to the Office of the Federal Defender, which accepted appointment as Petitioner's counsel (Dkt. Nos. 13, 15). The Government filed its return to the petition (Dkt. No. 10), and Petitioner filed a traverse (Dkt. No. 16). The parties completed supplemental briefing on June 22, 2026. Dkt. Nos. 18, 20. The petition is now ripe for the Court's consideration.

## II. DISCUSSION

### A. Legal Standard

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

ORDER ON HABEAS PETITION - 4

**B.      Petitioner's Prolonged Detention Without a Bond Hearing Violates Due Process.**

Petitioner contends that his prolonged detention without a bond hearing while the BIA reviews the appeal of his withholding-only proceedings violates due process.  The Due Process Clause of the Fifth Amendment ensures that no person may be "deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

As an initial matter, the parties dispute the applicable standard by which the Court should evaluate Petitioner's due process claim.  While the Government advances the *Mathews* test, Petitioner argues that *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), supplies the correct test.  *See* Dkt. No. 18 at 3, Dkt. No. 20 at 3–5.  The Court agrees with the Government. In *Banda*, the court was tasked with determining whether a non-citizen's mandatory detention pursuant to 8 U.S.C. § 1225(b) had become unconstitutionally prolonged.  385 F. Supp. 3d at 1117.

ORDER ON HABEAS PETITION - 5

In that context, the court rejected the *Mathews* test, finding that *Mathews* "balances the benefits or burdens of 'additional or substitute procedural safeguards'" but "does not resolve the more fundamental" question, at issue in that case, "of whether *any* procedure … must be provided." *Id.* at 1106–07 (emphasis added) (quoting *Mathews*, 42 U.S. at 335).

Here, the parties agree that Petitioner is detained under 8 U.S.C. § 1231(a)(6), which governs the detention of noncitizens subject to a final order of removal—not § 1225(b). Dkt. No. 10 at 3, Dkt. No. 16 at 8. And unlike detention under § 1225(b), detention under § 1231(a)(6) is not mandatory. *See Zadvydas*, 533 U.S. at 683 ("[Under § 1231(a)(6),] the Government 'may' continue to detain an alien who still remains [in the United States or may] release that alien under supervision." (quoting § 1231(a)(6))). Moreover, the DHS regulations discussed above, at least in theory, entitle Petitioner to procedural safeguards for obtaining review of his custody (though the Government concedes it did not follow those regulations here). *See* 8 C.F.R. § 241.4. Accordingly, consistent with district courts in this District and elsewhere, the Court agrees with the Government that the *Mathews* test determines whether the procedural safeguards afforded Petitioner complied with due process or whether Petitioner is instead entitled to a bond hearing.[3] *See, e.g., Sow v. Mullin*, No. 2:26-CV-00617-LK, 2026 WL 1223616, at *5 (W.D. Wash. May 5, 2026) (applying *Matthews* to determine whether non-citizen detained under § 1231 during prolonged withholding-only proceedings without a bond hearing violated due process); *Cabrera*

---

[3] Petitioner requests that, rather than order a bond hearing—the typical remedy available under the *Banda* analysis he advances—the Court should order Petitioner's immediate release. Dkt. No. 16 at 8–12. To support this request, he argues, in part, that "release on conditions is most consistent with *Zadvydas v. Davis*, 533 U.S. 678 (2001), in which the Supreme Court concluded that release—not bond hearings—was necessary to avoid a 'serious constitutional problem' when removal is not reasonably foreseeable six months after a removal order." Dkt. No. 16 at 8 (citing *Zadvydas*, 533 U.S. at 690). However, consistent with decisions of courts in this District and all federal appellate courts to have considered the issue, the Court finds that relief under *Zadvydas* is unavailable where, as here, any delay in removal is caused by ongoing litigation, such as Petitioner's pending appeal of his withholding-only proceedings. *Paez v. Scott*, No. 2:26-CV-01144-LK, 2026 WL 1396111, at *3–4 (W.D. Wash. May 19, 2026) (discussing caselaw). Instead, the Court finds that a bond hearing is the appropriate remedy for the due process violation alleged here.

ORDER ON HABEAS PETITION - 6

*Galdamez v. Mayorkas*, No. 22 CIV. 9847 (LGS), 2023 WL 1777310, at *4–8 (S.D.N.Y. Feb. 6, 2023) (same); *Cruz v. Bondi*, No. 25-CV-262-JJM-PAS, 2025 WL 3295485, at *7–10 (D.R.I. Nov. 26, 2025) (same).

1. Petitioner Has a Protected Interest in His Liberty.

Beginning with the first *Mathews* factor, Petitioner's private interest in not being detained is "the most elemental of liberty interests[.]"    *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment … lies at the heart of the liberty [the Due Process Clause] protects."). Petitioner has now been detained for over nineteen months—significantly longer than the presumptively reasonable six-month period identified in *Zadvydas*. And he has been detained in what essentially amounts to solitary confinement—unable to leave his room except for two hours of recreation a day, during which time he remains alone.  Dkt. No. 16-2 ¶ 3.   Because Petitioner has a strong private interest in remaining out of detention—particularly under the current conditions of his confinement—the first *Mathews* factor favors him.

2. The Risk of Erroneous Deprivation of Liberty is High.

The second *Mathews* factor—the risk of an erroneous deprivation of that private interest through the current procedures, and the probable value, if any, of additional or substitute procedural safeguards—also weighs in Petitioner's favor.  As described above, DHS regulations entitled Petitioner to a custody review process prior to the expiration of his 90-day removal period and again periodically thereafter.   8 C.F.R. § 241.4(k).  During such a review, Petitioner was entitled to have an attorney represent him, to submit evidence in his favor, and, if appropriate, to request a translator from the Government.  8 C.F.R. § 241.4(h)(2), (i)(3)(i)–(ii).  DHS regulations required the Government to consider certain factors in determining whether to continue Petitioner's custody, including "[f]avorable factors," such as "close relatives" lawfully residing in the United States and other "ties to the United States[.]"  *Id.* § 241.4(f).

ORDER ON HABEAS PETITION - 7

Here, the Government failed to conduct the custody review required by its own regulations until approximately nineteen months into Petitioner's detention—after Petitioner filed this habeas case. *See* Dkt. No. 11 ¶ 19, Dkt. No. 19-1. The Government's "failure to follow its own regulations … demonstrate[s] a substantial risk of erroneous deprivation." *Caceres v. Joyce*, 813 F. Supp. 3d 407, 417 (S.D.N.Y. 2025). Moreover, even the Government's belated custody review suffered from multiple procedural shortcomings: For one thing, DHS regulations place the burden on Petitioner to *disprove* flight risk or danger to the community, rather than on the Government to *prove* the same. The regulations also delegate the ultimate custody determination to ICE itself, rather than a neutral arbiter. And they do not provide for an in-person hearing where Petitioner could present arguments, call witnesses, or confront the Government's evidence. *See Cabrera Galdamez*, 2023 WL 1777310 at *6 (finding same procedural shortcomings to produce a high risk of erroneous deprivation). Petitioner's custody review in this case, culminating in a cursory, check-the-box decision denying release with almost no explanation, demonstrates the inadequacy of this process. *See* Dkt. No. 19-1 at 2 (stating simply that "[d]ue to your criminal history, you pose a danger to the community"; and "[d]ue to your immigration history, you are a flight risk").

Accordingly, the Court finds that the current procedures governing Petitioner's continued detention pose a high risk of erroneous depravation. The second *Mathews* factor therefore favors Petitioner.

3. The Government Interest in Continuing to Detain Petitioner Without a Hearing is Low.

Finally, the third *Mathews* factor—the Government's interest, including the function involved and the fiscal and administrative burdens of additional or substitute procedures—favors Petitioner as well. Petitioner does not dispute that the Government has an interest in detaining noncitizens to the extent needed to ensure that they do not abscond or commit crimes. Dkt. No.

ORDER ON HABEAS PETITION - 8

18 at 5.  However, "[t]hese interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025).

Particularly in light of the Government's failure to follow its own regulations mandating periodic custody reviews, the Court finds that an individualized bond hearing before an IJ to determine whether Petitioner's continued detention is warranted would not interfere with the Government's interests in effectuating Petitioner's removal and protecting the community.  The final *Mathews* factor therefore favors Petitioner.

In summary, the Court concludes that due process requires that Petitioner receive a bond hearing.  The Government has detained Petitioner in a cell by himself for over a year and a half without following its own regulations intended to ensure that civil immigration detention complies with due process.  And ICE's belated and cursory custody review procedure is an insufficient substitute for a bond hearing before a neutral arbiter, particularly considering the long duration and poor conditions of Petitioner's detention.  Any administrative burden occasioned by a bond hearing is insignificant when compared to the liberty interest at stake.

The Court will therefore order the Government to provide Petitioner a bond hearing within fourteen days at which the Government will bear the burden to prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk.  *See Sow*, 2026 WL 1223616, at *6; *Cabrera Galdamez*, 2023 WL 1777310, at *8.

### III.  CONCLUSION

Accordingly, The Court further ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (Dkt. No. 4) is GRANTED in part;

ORDER ON HABEAS PETITION - 9

(2) No later than **July 16, 2026**, the Government shall hold a bond hearing for Petitioner at which the Government will bear the burden of proving by clear and convincing evidence that he is a danger to the community or a flight risk;

(3) Within **FORTY-EIGHT (48)** hours of Petitioner's bond hearing, the Government must provide the Court with a declaration confirming that Petitioner has received such a hearing and stating whether Petitioner was granted bond and, if so, the conditions of his release;

(4) Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 8 U.S.C. § 2412.

Dated this 2nd day of July, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 10